RAMÍREZ, PLAINTIFF AND APPELLANT, v. MUÑOZ ET AL., DEFENDANTS AND APPELLEES.

APPEAL from the District Court of Humacao in an Action of Debt, Etc.

No. 2716.—Decided June 16, 1924.

JURISDICTION—AMOUNT IN CONTROVERSY—JOINDER.—When several causes of action can be joined the whole amount of all of them is what determines the jurisdiction of the court, and a district court is not without jurisdiction because the sum claimed in one of them is less than $500.

LEASE—PLEADING—SUBLESSEE.—The complaint in an action against sublessees to recover from them jointly and severally instalments of rent due from the lessee is insufficient if while it is alleged that payment was demanded of them the date of such demand is not mentioned in order to determine when their obligation to the lessee arose or that when the demand was made they owed rent to the sublessor.

ID.—ID.—ID.—DAMAGES BY FIRE—MISJOINDER.—A complaint in an action by the lessor against the lessee and sublessees after the expiration of the contract for delivery of the leased urban property in the same good condition in which they received it, or to pay the cost of the work necessary to repair the damages caused to it by a fire, is not insufficient because of failure to allege that the fire occurred through the fault or negligence of the lessee; nor can it be concluded that it is ambiguous, or that there was misjoinder of parties defendant, for in accordance with section 1454 of the Civil Code, the sublessees were liable also to the lessor for the damages to the property.

The facts are stated in the opinion.

*Mr. R. Arce* for the appellant.

*Messrs. F. González* and *A. L. López* for the appellees.

MR. JUSTICE ALDREY delivered the opinion of the court.

The action now before us on appeal was brought in the

District Court of Humacao by the owner of an urban prop-
erty situated in the city of Caguas and leased by him to an-
other person who then subleased different parts of the house
to three other persons. The complaint is directed against
the lessee and the three sublessees and sets up two causes
of action.

The complaint was filed six weeks after the lease had
expired and in the first cause of action it is alleged that the
rent was $70 a month payable monthly when due and that
neither the lessee nor the sublessees had paid the rent for
the last five months notwithstanding the efforts of the plain-
tiff to collect it, wherefore he prayed that the defendants
be adjudged to pay jointly and severally to the plaintiff the
amount of rent due and unpaid until the property should be
returned to him.

In the second cause of action it is alleged that notwith-
standing the fact that the term of the lease had expired,
the house continued in the possession of the lessee and sub-
lessees although the plaintiff had demanded that they re-
turn it to him; that in the lease contract the tenant agreed
to keep the house in good condition; that the house was
partially destroyed and in such a condition that it was un-
fit for the purposes for which it was used when received
by the lessee, due to a fire that started inside of the house;
that the house was not insured against fire, as the lessee
and the sublessees knew, but the merchandise of two of
the sublessees was insured for $9,000 and they collected the
amount of the policies; that about that time there were
several fires in mercantile establishments of Caguas, espe-
cially in the section where the plaintiff's house is situated,
and that notwithstanding the state of alarm then prevailing
in Caguas because of the repetition of the fires neither the
lessee nor the sublessees adopted any measures for the pro-
tection of the house, nor exercised any vigilance or dili-
gence to prevent its being burned, and that the cost of the
repairs that the house required amounted to $3,500, where-

fore the plaintiff prayed the court to adjudge that the defendants deliver the house to him in the same good condition in which they received it, or in default thereof to pay him the cost of the repairs and also the rent while the said repairs were being made.

All of the defendants demurred to the complaint on the ground of failure to state facts sufficient to constitute a cause of action, and the lessee and two of the sublessees alleged also that the court had no jurisdiction of the first cause of action because the amount claimed was less than $500, and that the second cause of action was stated ambiguously and contained a misjoinder of parties defendant and of causes of action.

The trial court held that it was without jurisdiction of the first cause of action because of the amount claimed and that it did not state a cause of action against the sublessees; and as to the second cause of action it held that the complaint was doubtful, that it did not state a cause of action because it was not sufficient to allege that the fire occurred, but it was necessary to allege that it was due to the fault or negligence of the defendants, and held also that there was a misjoinder of parties defendant.

The plaintiff declined to amend his complaint and judgment was rendered dismissing it, from which judgment he took the present appeal.

Although the instalments of rent due and unpaid on the date on which the complaint was filed did not amount to the sum of $500 which gives jurisdiction to the district court in actions of debt, yet, as the complaint set up a second cause of action for $3,500, within the jurisdiction of that court, we are of the opinion that it had jurisdiction also of the first cause of action because it could be joined to the second, as it originated from the same contract affecting all of the defendants and did not require to be tried in different districts, inasmuch as the Municipal Court of Caguas, which would have had jurisdiction of the action to

recover the instalments of rent, was within the judicial district of Humacao and the total amount and not that of each cause of action is what determines the jurisdiction of the court. Section 104 of the Code of Civil Procedure and the case of *Perea* v. *Castro*, 25 P.R.R. 98. But the complaint does not state a cause of action against the sublessees to recover from them jointly and severally the instalments of rent due from the lessee to the lessor, because the only obligation that section 1455 of the Civil Code imposes upon them toward the lessor is to pay him the instalments of rent as agreed upon in the sublease which they may be owing at the time of the demand, and although the complaint alleges that demand to pay was made upon them, it does not specify when such demand was made in order to show when their obligation toward the lessor arose or that when this demand was made they owed anything to the sublessor.

The demurrer to the first cause of action being thus disposed of, let us examine the allegations against the second.

In considering the claim set up in the second cause of action we will copy certain sections of the Civil Code which are related to this matter, as follows:

"Sec. 1458.—The lessee is obliged:

"1.—*   *   *.

"2.—To use the thing leased as a diligent father of a family would,   *   *   *."

"Sec. 1464.—The lessee must return the estate at the expiration of the lease in the same condition in which he received it, except what may have been destroyed or impaired by time or by unavoidable reasons.

"Sec. 1465.—If, at the time of the lease of the estate, the condition of the same was not mentioned, the law presumes that the lessee received it in good condition, unless there be proof to the contrary.

"Sec. 1466.—The lessee is liable for the deterioration or loss suf-

fered by the thing leased, unless he proves that it took place without his fault.''

In commenting on these sections, which are equivalent to sections 1561, 1562 and 1563 of the Spanish Civil Code, Manresa, in his Commentaries on the Civil Code, volume 10, pages 583 to 586, expresses himself as follows:

"Section 1563 prescribes that the lessee is liable for the deterioration or loss suffered by the thing leased, unless he proves that it occurred without his fault.

"If this section is to be correctly construed it is necessary, in the first place, to observe that the loss or deterioration to which it refers has a relative meaning referring specifically to the condition in which the thing leased must be returned according to sections 1561 and 1562. Hence, in order to determine whether such deterioration or loss exists it will be necessary to compare the present condition of the property with the condition in which it had to be returned, as from the result of this comparison alone can the liability of the lessee be determined.

"In the second place, it must be borne in mind that the rule laid down for the liability of the lessee has an exception contained in the same section, which is when the deterioration or loss may have occurred without his fault, an exception in accord with the conclusion of section 1561 relative to destruction or impairment by time or by unavoidable causes. We find here again the hypothesis of a fortuitous event. The lessee was not at fault; he did not act fraudulently, and yet the deterioration, loss or impairment occurred. The loss can be attributed only to what section 1561 calls unavoidable causes, that is, a fortuitous event. The lack of liability of the lessee is the only just conclusion, as we have seen from the last paragraph where we have shown also that the code does nothing more than to apply the general rule in the matter of obligations.

"But section 1563 not only exempts the lessee from liability in cases of fortuitous events; it adds another circumstance in the words relative to the lessee 'unless he proves that it occurred without his fault,' placing by these words the burden of proof on the lessee. Is this correct? Is there any particularity in this provision or is it, on the contrary, conformable to the general principles of law?

"The illustrious jurisconsult Duvergier has considered that according to the common law it is the lessor who must prove that the

loss or deterioration is due to the fault of the lessee in order to recover from him.

"Our code, as we have seen, prescribes the opposite, and in doing so it merely conforms to the general principles of contractual relations laid down in other parts of the code. Indeed, section 1183 prescribes that whenever the thing has been lost while in the possession of the debtor it shall be presumed that the loss occurred by his fault and not through a fortuitous event, unless there is proof to the contrary and without prejudice to the provisions of section 1096. Section 1096, in so far as applicable, refers to the liability of the debtor in case of unforeseen events when he was in default.

"It will not be sufficient, therefore, for the lessee to allege that the loss or deterioration was due to a fortuitous event; it will be absolutely necessary that he prove it, for it is the same to prove that he was free from fault, as provided in section 1563, as to prove a fortuitous event.

"On the other hand, proof of obligations devolves upon the person claiming their fulfillment and that of their extinction upon him opposing it, according to section 1214, and if the lessor demands the return of the thing in the condition in which it should be returned and proves the obligation of the lessee by means of the lease contract, and the lessee maintains that the thing should not be returned in that condition, but in another, he must prove it. This is not only logical, but is a direct result of section 1214.

*     *     *     *     *     *     *

"We have already seen the extent of the liability of the lessee for damages to the property, according to sections 1561 to 1564. A cause of damage and even of total loss may be fire.

"Neither in the sections that we are commenting on nor in any other does the code provide for such a contingency, from which we infer that this question must be decided in practice in accordance with the principles laid down and the provision of section 1568 in connection with the general theory of obligations.

"The matter, however, is so important and has been so exhaustively discussed that we can not fail to indicate its main principles, observing at the same time that this question might as well come in this place as in the commentary on section 1568; therefore, when we reach the latter we shall refer the reader to what we now state.

"As said by Pacifici-Mazzoni, the question was discussed by the interpreters of Roman law, they inquiring whether the burden was on the lessor to prove that the fire occurred through the fault of the lessee, or whether the latter must prove that there was no fault

on his part. While some, following Alfeno, maintained that *incendium sine culpa fieri non possit,* and in accord with Paulo that *plerumque incendia culpa fiunt inhabitantium,* finally admitting the presumption that fire occurs through the fault of the lessee, who is, therefore, bound for the damages, others, on the contrary, relying on the principle that *nemo praesumitur in culpa* and other authority of Ulpiano, concluded that the burden was on the lessor to prove that the fault of the lessee had had something to do with the fire.

"The question being thus undecided, section 1733 of the Code of Napoleon provided that the lessee is liable in case of fire, unless he prove that the fire was caused by a fortuitous event, *vis major* or defect of construction, or that the fire was communicated from an adjacent property. Jaubert, explaining these provisions, called them wise rules for the preservation of property which the lessor has no means of watching. These rules, he adds, are the most secure guaranty of the conduct of the lessee and of the care he should take with regard to his family and his servants. Beyond this the law establishes no more than a presumption that may be destroyed by evidence to the contrary; but the presumption should be established against the lessee, for, on the one hand, the lessor has no means of preventing or avoiding the accident, and on the other, fires generally occur through the fault of the inhabitants of the house.

"The theory of the French Code was criticized by those who believed that section 1733 limited the evidence of the lessor to the contrary to the cases especially mentioned in the said section, that is, fortuitous events, *vis major,* defect of construction or communication of the fire from an adjacent house; but to speak the truth, it is very questionable whether section 1733 should be construed strictly or whether, on the contrary, it should be given broader construction by considering that the law only mentioned the most frequent and probable cases, but without barring other cases where the lessee is free from fault. This is the opinion of Laurent and does not seem groundless.

"Considering these data, section 1589 of the Italian Code, following the precedents of the Sardinian Code, added to the cases mentioned by the French Code in which the lessee may prove his faultlessness that of when he may prove that the fire occurred notwithstanding the fact that his diligence was that of a good father of a family.

"Our code, as we have stated, says nothing about the event of fire; but as it can not logically be supposed that it contemplated leaving it without solution in practice, it is necessary to seek such

solution, as we have also said, in those sections which are so general in their provisions as to include it. These sections are those that we are commenting on and section 1568 and its concordant sections.

"From an examination of them as a whole the following is deduced: That if the lessee is liable for the deterioration or loss suffered by the thing leased, *unless he proves that it occurred without his fault* (sec. 1563); that if he must return the property in the same condition in which he received it, except what may have been destroyed or impaired by time *or by unavoidable causes* (section 1561), and that if when the thing is lost while in the possession of the debtor, *it shall be presumed that the loss occurred by his fault and not by a fortuitous event* (section 1568 in connection with sections 1182 and 1183), it follows necessarily that in order to be exempt from liability the lessee must prove that the fire occurred without fault or negligence on his part.

"The judgment of Section 3 of the Supreme Court of October 27, 1905, simply declares that the lessee must suffer the consequences of a fire caused by carelessness and neglect on his part.

"The question being thus decided in the light of the authorities cited, which are the only ones applicable, there is no room for discussion under our laws, as is the case under the French laws, of whether or not the cases where the lessee is exempt from liability are specifically and restrictively enumerated, for it is clear that whenever the lessee shows that he is free from all fault his liability does not arise whatever may be the cause of the fire.

"We think, therefore, that in placing the burden of proof upon the lessee our code is substantially in accord with the French and Italian Codes, and that in adopting this view it conforms to the elementary principles of justice and does not create an innovation in the general doctrine of obligations, notwithstanding the contrary opinion of Duvergier.

"And it could not be otherwise, because the occurrence of a fire, though evident in itself, is not of such a nature as to carry with it the exemption of the lessee from fault. If the damages were caused by a discharge of lightning and it were shown that this was the cause, it would not be necessary to discuss the degree of responsibility of the lessee, for it would be evident that neither the conduct nor the will of man could have had any influence upon such an occurrence. But a fire is not of that same character; the negligence and fault of the lessee, even his bad faith, may have been the cause of the accident, and inasmuch as the occurrence of the accident is

what the lessee invokes in favor of the extinction of his obligation to return the thing leased, it is only fair that he should prove that he is free from fault.''

We agree with the sound reasonings and conclusions of Manresa and can add little or nothing to them, although we will say that the statutory provision is just, as it is easy for the lessee to prove the excusable cause of the fire because the property is in his possession and he may have knowledge of the origin of the fire, while the lessor, who is not in the same position, would find it extremely difficult to prove that the fire occurred through the fault or negligence of his lessee, and it is known that a great majority of fires take place through the carelessness or negligence of the lessee.

This being settled, it follows that the trial court erred in holding the complaint insufficient because it did not allege that the fire occurred through the fault or negligence of the lessee, an allegation which the plaintiff would have had to prove.

There is another question in this case and it is whether the second cause of action lies against the sublessees, who have been sued jointly with the lessee for the return of the house in the same good condition in which it was received, or to pay the cost of the necessary repairs.

We are of the opinion that this cause of action exists against the sublessees also, because section 1454 of the Civil Code provides that a subtenant, without prejudice to his obligation with regard to the sublessor, shall remain bound to the lessor for all of the acts which refer to the use and preservation of the thing leased in the manner agreed upon between the lessor and the lessee; and inasmuch as in accordance with the law the lessee is responsible for the damage caused to the house by a fire, so are the sublessees responsible to the lessor for the damages caused to the property while in their possession.

In view of the foregoing there was no misjoinder of

parties defendant in the second cause of action, nor is the complaint ambiguous, because it clearly alleges that the house had been damaged by a fire and prays that it be returned in the same good condition in which it was when the lease was made, or that the cost of the necessary repairs be paid.

A misjoinder of causes of action in the second cause of action is also alleged on the ground that it is directed against the lessee and the sublessees, but, as we have already seen, all of the defendants are liable under this cause of action.

The judgment appealed from must be reversed and the case remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

Chief Justice Del Toro and Justices Wolf and Franco Soto concurred.

Mr. Justice Hutchison concurred in the judgment.